## McCoy v. Wolf Company, Appellant.

*Negligence—Master and servant—Unguarded shafting—Act of May 2, 1905, P. L. 352—Contributory negligence.*

1. Shafting thirteen and one-half feet above the floor of a factory and ending in a collar upon which is a projecting set screw, is properly guarded within the meaning of the Act of May 2, 1905, P L. 352, which provides that "shafting, set screws......shall be properly guarded," in so far as employees on the floor of the factory are concerned; but it is not properly guarded as to an employee who is engaged at work at a scaffold ten feet nine inches above the floor and who was killed by reason of his clothes catching on the end of the revolving shaft.

2. "Properly guarded" is a relative term or expression, and whether the statutory requirement in that respect has been complied with necessarily depends upon the facts of the particular case. Machinery may be so distant from the place where an employee is engaged, as to render it entirely safe as to him; on the other hand, it may be located in such proximity to the place he is called to perform his service that to protect him against danger an artificial guard is necessary.

3. In an action against an employer to recover damages for the death of an employee, the question of the deceased's contributory negligence is for the jury, where the evidence shows that the deceased did general work about the defendant's factory, that on the day of the accident he was directed to assist a carpenter in completing certain work in the construction of a scaffold of a temporary character; that about four feet above the top of the scaffold was a revolving shaft which was unguarded, and that the deceased in performing the work which he was directed to do was caught by the revolving shaft and killed.

Argued March 4, 1912. Appeal No. 225, Jan. T., 1911, by defendant from judgment of C. P. Franklin Co., April T., 1910, No. 155, on verdict for plaintiff in case of Fannie G. McCoy v. The Wolf Company. Before MES-TREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for death of plaintiff's husband. Before GILLAN, P. J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $1,510.41. Defendant appealed.

*Error assigned* was in overruling motion of defendant for judgment n. o. v.

*Sharpe & Elder* and *Wetzel & Hambleton,* for appellant.—The line shaft was properly guarded: Glassheim v. Printing Co., 34 N. Y. Supp. 69; Glen Falls Portland Cement Co. v. Ins. Co., 162 N. Y. 399, (56 N. E. Repr. 897); Kirwan v. Am. Lithographic Co., 108 N. Y. Supp. 805; Strode v. Columbia Box Co., 124 Mo. App. 511, (101 S. W. Repr. 1099); Harper v. R. R. Co., 115 S. W. Repr. 198; Houg v. Lumber Co., 129 N. W. Repr. 633; Belles v. Jackson, 4 Pa. D. R. 194; Gillen v. Rowley, 134 Pa. 209.

When contributory negligence is plainly shown by the uncontradicted evidence of plaintiff's own witnesses, defendant is entitled to binding instructions: McCauley v. Phila. Trac. Co., 13 Pa. Super. Ct. 354; Holmes v. Union Trac. Co., 199 Pa. 229; Martin v. Niles-Bement-Pond Co., 214 Pa. 616; Lee v. Dobson, 217 Pa. 349.

*John W. Hoke,* with him *William S. Hoerner,* for appellee.—The shaft was not properly guarded: Jones v. Caramel Co., 225 Pa. 644; Fegley v. Rubber Co., 231 Pa. 446; Valjago v. Steel Co., 226 Pa. 514.

The appellant alone was responsible for the location, construction and dimensions of the scaffold. It was built and placed by an agent of the owner who was in charge of the work, and was therefore a vice principal: Groves v. McNeil, 226 Pa. 345.

Opinion by Mr. Justice Mestrezat, March 18, 1912:

This is an action of trespass brought by the plaintiff to recover damages which she sustained by the death of

her husband, caused, as she alleges, by the negligence of
the defendant company. The defendant is a manufac-
turing company and its plant is located at Chambers-
burg, Pennsylvania. The machinery on the floor of the
machine shop is driven by a line shaft which is sup-
ported by hangers suspended from the ceiling. It ex-
tends east and west and is about two feet from the small
tool room located in the southwest corner of the shop.
The company desiring to extend the shaft eastwardly
directed one Selig, in its employ, to make the extension,
and in doing so it was necessary to erect a temporary
scaffold. On the morning of February 7, 1910, Selig
began the construction of the scaffold, and in the after-
noon of that day, having asked the defendant for as-
sistance, McCoy, the plaintiff's husband, was directed to
assist in the work. McCoy was an employee of the
defendant and did general work about the plant. When
he arrived at the place the framework of the scaffold
was in position, and nothing remained to be done but to
lay three boards on top of the structure and brace it.
McCoy began his work by assisting Selig to put the
plank on top of the scaffold. He and Selig then pro-
ceeded to brace the structure from the top by nailing the
stays to the scaffold and to the tool room. Having com-
pleted the work, McCoy undertook to leave the scaffold,
when his clothing was caught by the revolving line shaft
and he was killed. His clothing remained on the east
end of the shaft. The scaffold was erected for the pur-
pose of installing the necessary hangers along the ceil-
ing of the shop for the extension of the shaft. The
shaft was about thirteen and one-half feet above the
floor and about one foot below the ceiling. It was to
be extended eastwardly from the existing shaft. The
scaffold was about ten feet nine inches high, from
twelve to fourteen feet long, three feet wide, about four
feet below the line shaft, and extended about fifteen
inches west of the east end of the shaft. Hangers sup-
ported the line shaft and a screw with a square end pro-

jected about three-fourths of an inch from the set-collars which were fastened to the shaft and were on each side of the hangers. One of the hangers was about eight inches from the east end of the shaft.

The negligence of which the plaintiff complains was the failure to have the line shaft protected as required by the 11th section of the Act of May 2, 1905, P. L. 352, 5 Purd. 5484. That section provides, inter alia, as follows: "All vats, pans, saws, planers, cogs, gearing, belting, shafting, set-screws, grindstones, emery wheels, fly wheels and machinery of every description shall be properly guarded." The defense was that the machinery was "properly guarded" as required by the statute, and that the deceased was guilty of contributory negligence. It is contended by the defendant that the distance of the shaft from the floor was a proper guard under the statute, and that the facts not being in dispute, the court should have so declared as a matter of law. With this contention we do not agree. The purpose of the statute was, as indicated by the title, "to provide for the safety of all employees in all industrial establishments." This can only be accomplished by guarding all machinery with which any employee may reasonably be expected to come in contact. The distance of the shaft and set-screw above the floor in the present case would be sufficient protection against any apparent danger to employees on the floor. As to such, the machinery was properly guarded, but it was not only those employees that the statute required to be protected but all those engaged in the defendant's service in that establishment. "Properly guarded" is a relative term or expression, and whether the statutory requirement in that respect has been complied with necessarily depends upon the facts of the particular case. Machinery may be so distant from the place where an employee is engaged as to render it entirely safe as to him; on the other hand, it may be located in such proximity to the place he is called to perform his service that to protect him against

danger an artificial guard is necessary. The purpose of the statute clearly discloses this distinction. The necessity for an artificial guard, therefore, depends upon the existence of certain conditions and is a question of fact for the jury. In the present case it was the duty of the defendant to protect McCoy and Selig against the danger incident to contact with the revolving line shaft. They were required to perform their work in close proximity to it. It is true that the scaffold had no connection with the operation of the revolving shaft, but that is of no consequence so far as concerns the right of the decedent to protection against the danger of the unguarded machinery. The scaffold was being erected by the defendant company, and it must be assumed that the company knew its location and its proximity to the shaft. This fact charged it with notice of the danger to the decedent necessarily incident to the performance of his work, and, therefore, imposed upon the company the statutory duty of protecting him from contact with the shaft and projecting screw by an artificial guard. The failure to furnish such guard was negligence.

Whether the deceased was guilty of contributory negligence was clearly for the jury. McCoy was directed by the defendant to assist in the erection of the scaffold. He had nothing whatever to do in locating it. When he began work the scaffold was almost completed, and nothing remained to be done except to place the planks on top of the framework for the floor, and to brace or stay it. He was doing his work at the place he was required to do it. It was necessary to connect the extension with the existing shaft, and it is certainly not apparent that the work could have been done without the scaffold extending at least some distance beyond the east end of the existing shaft. There is no evidence that the scaffold was not erected in the proper place, and we cannot assume that it was not so erected. The shaft was about four feet above the top of the scaffold and the danger to the employees in nailing the brace was not so obvious

or imminent that the court could declare the performance of the work under the circumstances to be negligence. There is no evidence tending to show that McCoy was directed not to brace the scaffold in the way in which he and Selig were doing it, or that he knew it could be done as well in any other way. Presumably he was performing the work in the manner in which he believed it should be done. Manifestly, Selig also thought that the braces should be nailed at the top of the uprights, and he also thought it could be done in safety. The uprights of the scaffold were toe-nailed at the bottom. It cannot be assumed that either of the men believed they were endangering their lives in the performance of the service. It was, therefore, a question for the jury whether the decedent was negligent in attempting to assist Selig in nailing the braces to the scaffold and the tool room.

The judgment is affirmed.