# Lanahan, Appellant, *v.* Arasapha Manufacturing Company.

*Negligence—Master and servant—Machinery—Proper guards—Belt shifter—Scope of employment—Evidence—Case for jury—Act of May 2, 1905, P. L. 352.*

1. Performance of the statutory duty imposed upon the proprietor of an industrial establishment by the Act of May 2, 1905, P. L. 352, is the only excuse which the law will accept from him when charged with the disregard of it resulting in injuries to an

employee, unless the latter is guilty of contributory negligence and there is no reason or excuse for his being in proximity to the unguarded machinery at the time he was injured. The machinery is to be guarded, not only for the protection of those working at or about it but for the safety of all other employees in the establishment who may fairly and without fault on their part come in contact with it.

2. In an action against an employer to recover damages for the death of an employee alleged to have been caused by reason of defendant's failure to observe the requirements of the factory act of May 2, 1905, P. L. 352, the case is for the jury where it appears that plaintiff's husband had been employed as a "man of all work" in the defendant's mill; that in the course of performing his work he operated an elevator, power to run which was furnished by a revolving shaft about ten feet above the floor of a room into which decedent's duties took him; that on a collar attached to this shaft a set screw projected about one-half inch, unguarded in any way; that there was no belt shifter to throw belts on and off the pulley on the shaft by which the elevator was operated; that immediately before the accident the belt by which the elevator was operated had slipped from the pulley; that the decedent was last seen standing at the foot of a step-ladder under the revolving machinery; that it was the general rule in other parts of the mill for belts to be put on pulleys by the different employees whenever they were so disposed, and that there was no evidence that the plaintiff had been forbidden to so act.

Argued February 12, 1913. Appeal, No. 393, Jan. T., 1912, by plaintiff, from order of C. P. Delaware Co., Dec. T., 1909, No. 183, refusing to take off nonsuit in case of Emma Lanahan v. Arasapha Manufacturing Company. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before JOHNSON, P. J.

The opinion of the Supreme Court states the case.

Error assigned, among others, was in entering and refusing to take off nonsuit.

Joseph H. Hinkson, with him J. DeHaven Ledward,

for appellant.—Whether plaintiff's decedent was acting within the line of his duty at the time of the accident was a question of fact for the jury: Doyle v. Waste Co., 204 Pa. 618; Daley v. Printing Co., 152 Mass. 581 (26 N. E. Repr. 135); Weaverling v. Thropp, 237 Pa. 163; Conley v. Foundry Co., 14 Pa. Superior Ct. 626; Simmons v. R. R. Co., 199 Pa. 232; Moon v. Matthews, 227 Pa. 488.

*Morton Z. Paul,* for appellee.—Plaintiff's case was insufficient in that it did not affirmatively show that it was plaintiff's duty to put the belt on the pulley in question: Jones v. Scranton Coal Co., 211 Pa. 577; Gillen v. Rowley, 134 Pa. 209; Michael v. Henry, 209 Pa. 213; Rowan v. Prettyman, 194 Pa. 443; Martin v. Niles-Bement Pond Co., 214 Pa. 616.

OPINION BY MR. JUSTICE BROWN, April 14, 1913:

On this appeal from the refusal to take off a judgment of nonsuit the question for our determination is whether, on her case as the plaintiff presented it in the court below, she was improperly denied the right to have a jury pass upon her claim for compensation from the defendant company for the death of her husband. At the time of his death, and for five years prior thereto, he had been one of the employees in its mill, serving—according to the testimony of his wife—as "a man of all work." Other witnesses testified that he took trucks up and down the elevator to the different departments in the establishment, distributed yarns and warps throughout the weaving department, bringing them down-stairs from the winding room, and did other things about the mill. In performing his work he operated an elevator. His duties took him to the various departments and rooms of the mill, including one known as the "burling room." In this room there was a revolving shaft about ten feet from the floor, and it furnished the power to a counter shaft by which the elevator was run. On a

collar attached to this counter shaft a set screw projected for about a half inch. It was not guarded in any way and never had been, as required by the Act of May 2, 1905, P. L. 352, though the factory inspector had left with the president of the defendant company a copy of that act. Nor was there a belt shifter, as required by the act, to throw belts on and off the pulley on the shaft by which the elevator was operated. On February 11, 1909, James Lanahan, appellant's husband, was caught by the unguarded set screw referred to and whirled to his death around the revolving shaft. Immediately before his clothing came in contact with the set screw he was seen by a coemployee standing at the foot of a stepladder under the revolving machinery. The belting by which the elevator was operated had slipped from the pulley on the counter shaft. As there was no belt shifter, the only inference to be drawn is that, when the deceased was thus seen at the foot of the ladder, he was about to ascend to the shaft for the purpose of placing the belt on the pulley, for, a moment or two afterwards, his dead body was found hanging to the shaft or set screw. That he ascended the ladder for that purpose and was killed by being caught by the set screw is conceded by counsel for appellee in the counter statement of the question involved. We do not have the benefit of the reason why the court below refused to take off the nonsuit, but infer, from what was said by the learned trial judge during the progress of the trial, that it was entered because the appellant had failed to show that her husband had been killed while in the performance of any duty which had been imposed upon him by his employment. In this we cannot concur.

The imperative words of the Act of 1905 are: "The owner or person in charge of an establishment where machinery is used shall provide belt-shifters or other mechanical contrivances for the purpose of throwing on or off belts or pulleys......All vats, pans, saws, planers, cogs, gearing, belting, shafting, set screws, grindstones,

emery wheels, fly wheels, and machinery of every description shall be properly guarded." The purpose of the act, as expressed in its title, is "To provide for the safety of all employees in all industrial establishments"; and performance of the statutory duty imposed upon the proprietor of an industrial establishment is the only excuse which the law will accept from him when charged with the disregard of it, resulting in injuries to an employee, unless the latter was guilty of contributory negligence or there was no reason or excuse for his being in proximity to the unguarded machinery at the time he was injured. The machinery is to be guarded, not only for the protection of those working at or about it, but for the safety of all other employees in the establishment who may fairly and without fault on their part come in contact with it. In McCoy v. Wolf Company, 235 Pa. 571, the unguarded machinery was thirteen and one-half feet above the floor, and it was contended by the defendant that its distance was a proper guard under the statute; but, in refusing to sustain this contention, we said: "The purpose of the statute was, as indicated by the title, 'to provide for the safety of all employees in all industrial establishments.' This can only be accomplished by guarding all machinery with which any employee may reasonably be expected to come in contact. The distance of the shaft and set screw above the floor in the present case would be sufficient protection against any apparent danger to employees on the floor. As to such, the machinery was properly guarded, but it was not only those employees that the statute required to be protected but all those engaged in the defendant's service in that establishment."

In the case before us it is first to be remembered that there was no belt shifter, as required by the statute, to throw back a belt that had slipped from the pulley on the shaft by which the elevator was operated, and the defendant company, therefore, knew that when a belt so slipped some one in its employ would have to ascend

to the shaft for the purpose of replacing it upon the pulley. This would necessarily bring any one so replacing the belt in close proximity to, if not in actual contact with, the revolving shaft and the collar upon it, and, as to him, no excuse could be made by the employer for not properly guarding it. This surely is not to be questioned. Under what circumstances did the deceased ascend to the shaft for the purpose of replacing the slipped belt? As an employee of the defendant company, one of his duties was to run the elevator. The belt upon which its operation depended had slipped from the pulley and the elevator had presumably stopped. Who more naturally than he would have replaced the belt, unless he had been expressly forbidden to do so; and it was not developed in the plaintiff's presentation of her case that he had ever been so forbidden. On the contrary, in addition to the testimony that his duties called him into all the departments and rooms of the establishment, it was affirmatively shown by a not too willing witness, called by the plaintiff—the master mechanic of the defendant company—that in other parts of the mill belts had been put on pulleys by the different employees whenever they were so disposed, and that, at the time Lanahan was killed, this was a general rule. If he but followed this rule or custom when he went up the ladder to put the belt on the pulley, his employer is estopped from saying that, as to him, it was not required to guard the set screw in the revolving collar: Cramer v. Aluminum Company of America, 239 Pa. 120. And the right of the appellant to recover is not to be defeated by the mere testimony of defendant's master mechanic, elicited by it from him under questionable cross-examination, that it was no part of the duty of the deceased to put the belt on the pulley, as that duty was performed by him or one of his assistants, for in the very same breath he admitted, as just stated, that the general rule throughout the mill was that, at the time of the accident, the belts were put on by defendant's employees whenever

they were so disposed. He further admitted that he was ignorant of what orders may have been given to the deceased, and there is no presumption that the latter did what he had been forbidden to do. The case was for the jury, subject to any legal defense that the defendant company might have, and the judgment is, therefore, reversed with a procedendo.