# Wagner *v.* Standard Sanitary Manufacturing Company, Appellant.

*Negligence—Master and servant—Guarding dangerous machinery—Practicability of guard—Act of May 2, 1905, P. L. 352—Contributory negligence—Charge—Case for jury—Practice, C. P.—Record—Testimony—Allegata and probata—Evidence—Notes of testimony.*

1. The purpose of the Act of May 2, 1905, P. L. 352, is to protect working people by requiring dangerous mechanical appliances to be properly guarded when in operation, not to prohibit their use altogether, or to make every manufacturer an insurer of all persons engaged around machinery which possesses inherent possibilities of danger, against which, owing to the nature of the work to be performed, an operator cannot be protected by any known device. The phrase "properly guarded" is a relative term and whether the statutory requirement in that respect has been complied with depends upon the facts of the particular case. The words "properly guarded" mean suitably guarded, and if a piece of machinery cannot be protected in any manner whatsoever without rendering it useless for the service which it usually performs, there is no suitable guard for that particular machine and it cannot be "properly guarded."

2. In an action to recover damages for personal injuries resulting from the alleged failure to properly guard a machine, the case is for the jury where the evidence is conflicting as to whether such a machine can be properly guarded and used.

3. In an action against a manufacturing company to recover damages for personal injuries the case is for the jury and a verdict for the plaintiff will be sustained where it appears that the plaintiff, who had been in the employ of the defendant company for nine years and during the last five months of that period had been foreman of its enameling department, was injured by the explosion of a swiftly moving, unguarded emery wheel, at which he was working, in another department; that at the time of the accident he was grinding down brass under instructions from defendant's assistant manager; and there was evidence adduced by the plaintiff showing that the wheel was being run at an excessive speed without the knowledge of the plaintiff, and that it was practicable to guard it so as to prevent injury in case of a break, while defendant denied that the wheel could be guarded without interfering with its use.

4. In such case it was not error for the court to refuse binding instructions on the ground that the allegata and probata did not agree, where the statement alleged that the wheel was revolving "from 1,800 to 2,000 revolutions per minute, whereas it should not have been run or operated more than 1,200 revolutions per minute," and the proofs presented by the plaintiff would have justified the inference that the wheel was being operated at the rate of 1,912 revolutions a minute, and that such a wheel could not be safely driven in excess of 1,175 revolutions a minute.

5. When a witness indicates anything that is important to the decision of an issue, counsel eliciting the testimony should see that a proper description is placed upon the record at the time, showing not merely the bare fact that the witness indicated something, but exactly what he pointed out, so that the notes may be properly understood by one not present at the trial. When this course is not pursued, the appellate courts will always assume the facts indicated most strongly against the appellant, that is, that the matter undisclosed was such as to support the verdict rather than otherwise.

Mr. Justice Brown dissents from the court's construction of the Act of May 2, 1905, P. L. 352.

Argued Oct. 30, 1913. Appeal, No. 216, Oct. T., 1913, by defendant, from judgment of C. P. Allegheny Co., Jan. T., 1912, No. 186, on verdict for plaintiff in case of Frank Wagner v. Standard Sanitary Manufacturing Company. Before Brown, Potter, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before Frazer, P. J.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $5,625.00, and judgment thereon. Defendant appealed.

Errors assigned were in refusing binding instructions for defendant, answers to points and the admission of certain testimony referred to in the opinion of the Supreme Court.

Walter Lyon, of Lyon & Hunter, for appellant.

*Thomas M. Marshall, Jr.,* with him *A. H. and H. H. Rowand* and *Thomas M. Marshall,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, March 2, 1914:

The defendant company is a manufacturer of tubs and bath room utensils. The plaintiff had been in the defendant's employ for nine years and during the last five months of that period acted as foreman of its enameling department; on November 1, 1909, he was severely and permanently injured by the breaking of a swiftly moving, unguarded emery wheel, technically called a carborundum wheel, at which he was working; he sued and recovered a verdict, upon which judgment was entered, and the defendant has appealed.

The controlling facts in the case and the view of the court below upon the applicable rules of law are tersely and plainly stated in the following excerpts from its opinion refusing a new trial: "Plaintiff's contention was that he was directed by the assistant manager to make repairs to an appliance used in defendant's department for enameling bath tubs and other fixtures, known as a hammer, that to do so he was obliged to go to the cleaning department, where carborundum wheels were used, to grind down a brass rod, and that while engaged in reducing the size of the rod the wheel exploded, resulting in the injury complained of. The negligence ......upon which the plaintiff based his right to recover was, (1) Defendant's failure properly to guard the carborundum wheel at which plaintiff was working, (2) that the wheel was being driven, without plaintiff's knowledge, at an excessive speed. The 11th section of the Factory Act of May 2, 1905, P. L. 352, requires that, '.......all......grindstones, emery wheels, fly-wheels and machinery of every description shall be properly guarded.'......Any failure to comply with the requirements of the statute on the part of the employer is negligence from which he cannot be excused unless the employee was guilty of contributory negligence: Lanahan

v. Arasapha Mfg. Co., 240 Pa. 292; whether the employee is chargeable with contributory negligence is a question always for the jury where the testimony, as in this case, is conflicting. The question of plaintiff's contributory negligence was fairly submitted, and the jury told that if he was assuming to do work that he had no right to do and was not ordered to do, he was guilty of contributory negligence and could not recover. This question we think was fully and fairly discussed in our charge. Whether or not the carborundum wheel should have been guarded, in our opinion, depends upon whether or not it was practicable to do so, considering the purpose for which it was installed and used. In view of the conflicting testimony upon this point the question, in our opinion, was for the determination of the jury. In our instructions the jury were told......that the statute was not intended to prohibit the use of dangerous machinery, and that it did not require carborundum wheels to be guarded if it was not reasonably practicable to guard them, considering the purpose for which they were being used; and as to whether it was practicable to do so the testimony was conflicting.......The testimony being conflicting as to whether or not the carborundum wheel could be guarded and used for the purposes for which it was intended, the speed at which it was being revolved, and also if plaintiff was directed by the assistant manager to make repairs to the hammer, these questions were for the jury."

So far as the construction of the statute is concerned, this case might well be affirmed on the views of the court below, without more, for we agree with the learned trial judge that under the Act of 1905, supra, it was for the jury to say whether or not it was reasonably possible properly to guard the wheel which caused the injury to the plaintiff. Statutes of this character ought to be given a reasonable construction (Honor v. Albrighton, 93 Pa. 475, 478), and the present act does not require an interpretation which would practically prohibit the

use of machinery possessing unavoidable elements of danger. "The phrase, 'properly guarded,' is a relative term or expression, and whether the statutory requirement in that respect has been complied with necessarily depends upon the facts of the particular case...... The necessity for an artificial guard depends upon the existence of certain conditions and is a question of fact for the jury": Booth v. Stokes, 241 Pa. 349, 351; Izzo v. Finn, 238 Pa. 602, 604; McCoy v. Wolf, 235 Pa. 571, 574. We interpret the words, "properly guarded" to mean,—suitably guarded,—and if a piece of machinery cannot be protected in any manner whatsoever, without rendering it useless for the service which it usually performs, then it is plain that there is no guard suitable to that particular machine and, therefore, it cannot be "properly guarded"; for a guard which would prevent a machine from performing its functions is not in any sense a proper guard. The apparent purpose of the act in question is to protect working people by requiring dangerous mechanical appliances to be properly guarded when in operation, not to prohibit their use altogether, or to make every manufacturer in this great industrial State an insurer of all persons engaged around machinery which possesses inherent possibilities of danger, against which, owing to the nature of the work to be performed, an operator cannot be protected by any known device. When a departure of that character is intended the legislature will, no doubt, express it in unmistakable language; we do not conceive that the law-makers contemplated such an idea in the act before us, nor do we feel that the language there employed calls for or warrants that construction. If, however, a machine can be guarded and used, then the act requires that proper protection shall be provided. In connection with some of the assignments of error, it is important to keep in mind that the case at bar was tried upon the view of the act here indicated, and that the trial judge instructed the jury accordingly. The ques-

tion of the sufficiency of the evidence to sustain a finding that in this particular case it was reasonably possible to protect the operator of the machine by a proper guard, is a point which will be duly considered when reached in turn; but we shall dispose of the several assignments in their order.

The first specification complains because the trial judge refused to give binding instructions for the defendant. The appellant contends that the allegata and probata did not agree, in that the declaration stated the wheel was revolving "from 1,800 to 2,000 revolutions per minute, whereas it should not have been run or operated more than 1,200 revolutions per minute," while the proofs fail to show more than 956 revolutions per minute, and in that the declaration averred a wheel of slightly larger dimensions than the proofs actually showed the one that caused the injury to be. This point does not seem to have been pressed at trial, and we feel that it is without substantial merit. The jury could justifiably have found from the testimony of the plaintiff concerning the wheel and its appliances, as supplemented by his experts, that it was operated at the rate of 1,912 revolutions per minute, and that an unguarded wheel of the character of the one in question could not safely be driven above 1,175 revolutions per minute. The difference in the dimensions averred and those proved, caused the defendant no apparent embarrassment, and, under the circumstances of this case, constituted no such departure from the declaration as calls for relief at our hands.

The second assignment complains of the refusal of a point for charge to the effect that there was "no evidence" that the wheel was run at an excessive rate of speed or that its rapidity in anywise contributed to the accident. In view of the proofs, the matters covered by this request were issues for the jury, and they were properly submitted. Under this specification, the appellant contends that the testimony of one of the experts

called by the plaintiff shows that the accident was caused by the latter's permitting the piece of brass he was grinding to come between the wheel and the rest upon which he was holding it, thus causing the space to be clogged and the wheel to break; the contention is based on a reference in the testimony to a mark upon the wheel, and a statement by the witness that the mark and the accident might have been caused in that way. Should we accept the defendant's construction of this item of testimony, it would not be sufficient, in view of the other proofs, to take the case from the jury; but the real value of the evidence does not appear, for the notes fail to show what particular mark the expert referred to, and counsel, at argument, disagreed as to this. The transcript of the testimony simply gives the question, "Show where the mark is?" and the reply, "Here's the mark, here (indicating)." When a witness indicates anything that is important to the decision of an issue, counsel should see that a proper description is placed upon the record at the time, showing not merely the bare fact that the witness indicated something, but exactly what he pointed out, so that the notes may be properly understood by one not present at the trial. For instance, in this case, instead of simply the word "indicating," the notes ought to have been made to read, "indicating a mark on the wheel—(giving its location as nearly and clearly as possible)." When this course is not pursued, we must always assume the fact indicated most strongly against the appellant,—that is that the matter undisclosed was such as to support the verdict rather than otherwise.

The next two specifications complain of the admission of testimony concerning the propriety of safety-guards and showing the kind that could be applied to the wheel in question. The appellant contends that, owing to the use made of the wheel, external guards of any character were impracticable, and that to sustain this verdict would in effect be to rule that the wheels employed by

the defendant must be abandoned and a different kind installed. If the testimony of the witnesses for the defendant be accepted as verity, the verdict is susceptible of that construction; but when one looks at the proofs as a whole, it is apparent that, under the testimony of the plaintiff and some of his witnesses, the use made of the wheel was not as contended by defendant, and further, that it was perfectly practicable to guard the wheel, without changing its character or construction, and at the same time to continue its regular, customary use. In other words, according to the testimony presented by the plaintiff, the defendant could put effective guards on this wheel and it would continue to perform the same service as theretofore. If the customary use made of the wheel permitted guarding, it was competent to introduce testimony to show the kind of guards that were available to the defendant and regularly employed by others using such wheels; and this was the character of evidence objected to. The issues were for the jury and the proofs were relevant and competent.

The fifth assignment complains of the refusal to charge that there was "no evidence" of knowledge on the part of the officers of defendant company that the plaintiff was in the habit of using tools and appliances outside of his particular department. Express knowledge on this point was not necessary, and the proofs were sufficient to show implied notice.

The last assignment complains of the refusal to enter judgment n. o. v. for the defendant. In view of what we have already written, this alleged error does not require any special consideration. From no aspect is this an instance where the possible danger from the breaking of the wheel was so obvious and imminent that the rule of assumption of risk could properly be applied by the court, or where it could be said as a matter of law that the plaintiff was guilty of contributory negligence, any more than under the evidence it could be ruled that the defendant was per se negligent; the testimony as to

318 WAGNER *v.* STANDARD S. MFG. CO., Appellant.

many of the controlling facts was conflicting, and the inferences to be drawn therefrom were not always certain; all of which tended to make the case one for the jury. The issues were submitted in a charge which fairly marshalled the evidence and stated the questions involved with clearness and absolute impartiality. It may be that we should not have found some of the facts as did the triers in this case, but we cannot say that the proofs are not sufficient in law to sustain the verdict.

The assignments of error are all overruled and the judgment is affirmed.

OPINION BY MR. JUSTICE BROWN, dissenting from the construction by majority of court of Act of 1905, March 2, 1914:

In passing the Act of May 2, 1905, P. L. 352, the legislature acted within its conceded police powers. In enumerating the machinery and appliances which it declared shall be guarded in industrial establishments it specifically named emery wheels. No condition of any kind is annexed to the statutory duty imposed upon employers to guard these wheels. The duty to guard them is absolute. In the case at bar the plaintiff below was injured by the breaking of a swiftly moving, unguarded emery wheel, and while I concur in the affirmance of the judgment in his favor, I cannot withhold my dissent from the construction which the majority of the court have placed upon the Act of 1905. In approving what the court below said in its opinion refusing a new trial, they read into the sentence specifically enumerating the machinery and appliances which the legislature has declared shall be properly guarded the words "whenever practicable" or "if practicable." It seems to me that the words which are thus read into the sentence were intentionally omitted from it by the legislature. Nothing is said in it about the practicability of guarding the enumerated machinery; but, in the sentence immediately preceding, it is provided that, "whenever practicable, all machinery

shall be provided with loose pulleys." The legislature thus declared that practicability in guarding machinery shall be limited to loose pulleys. Expressio unius est exclusio alterius. In the independent sentence immediately following, and now under consideration, no such provision appears, and its words, which are free from all ambiguity, are susceptible of but one meaning, and that is that there rests upon the employer the absolute duty of properly guarding all the machinery and appliances enumerated in it. I much regret that my brethren have felt themselves compelled to construe the Act of 1905 as it was construed by the court below. If the machinery and appliances which the legislature explicitly says must be guarded cannot be guarded, they ought not to be used until the legislature lifts the inhibition. It is not for us to permit that which the legislature, in the valid exercise of its police powers, has prohibited. If such prohibition be harsh, "Its harshness is no concern of the courts. They have no responsibility for the justice or wisdom of legislation, and no duty except to enforce the law as it is written, unless it is clearly beyond the constitutional power of the lawmaking body": St. Louis & Iron Mountain Ry. Co. v. Taylor, 210 U. S. 281.

True, we have said of an act similar to the Act of 1905 that it is to be reasonably construed, but, in so holding, the question was not one of not guarding at all, but was whether machinery had been properly guarded, because "properly fenced off" or "properly guarded" is a relative term or expression: McCoy v. Wolf, 235 Pa. 571. This was just the situation in Honor v. Albrighton, 93 Pa. 475, cited in the majority opinion in support of the construction given to the Act of 1905. Not until now has this court ever held that machinery, which the legislature in unequivocal words has declared shall be properly guarded, may be unguarded if it be impracticable to guard it. By the statute of 7 & 8 Vict. c. 15, s. 21, certain machinery was required to be fenced. In Doel v. Sheppard, et al., 5 E. & B. 856, the plaintiff's cause of

action, as laid in the declaration, was the failure of the defendants to fence the machinery which caused the injury. The third plea of the defendants was that the machinery was not required to be guarded, for reasons specifically set forth in the plea. In holding that no excuse could be heard for evading the plain requirement of the statute, COLERIDGE, J., said: "What your plea, in effect, states is, that the legislature ought not to have required this particular machinery to be fenced"; and the Lord Chief Justice added: "I think the construction of the act which is contended for by the defendants is most erroneous; it would, in fact, amount to a repeal of the act. The act does not merely provide that machinery in factories is to be fenced where it is dangerous. All mill gearing, while in motion for a manufacturing purpose, is to be fenced. The legislature did not intend to leave it to be decided, upon the circumstances of each case, whether the machinery was dangerous and required fencing. On the third plea our judgment will be for the plaintiff." The Court of Queen's Bench felt itself bound by the Act of Parliament as it was written.

In construing a statute passed by the State of Wisconsin, similar to our Act of 1905, the Supreme Court of that state, in holding that the plea of impracticability of compliance with the statute was unavailing, said what I feel this court ought now to say: "The intent of the statute is that if an employer maintains a situation within it, which as an ordinarily prudent man he ought reasonably to apprehend may cause a personal injury to any of his employees in the discharge of his duty, he must hold himself responsible for the consequences proximately produced thereby to any such employee without his contributory negligence. In that situation the rule of the statute is inexorable. The charity of the law as to the employer has been exhausted. There are only left its penalties from which there is no escape under the law as it stands. It is no defense or excuse as regards civil remedies that it is not practicable to guard against the

danger or to efficiently do so without some particular instrumentality.......It is no answer to a case satisfying the statutory conditions that it was impracticable to comply with the statute. The police power, as the statute has been construed, was not exceeded in passing it. Therefore, the duty to comply therewith is absolute": Willette v. Rhinelander Paper Company, 145 Wis. 537.