Francis C. O'NEILL and Aetna Casualty
& Surety Co.

v.

UNITED STATES of America,
Appellee,

v.

AMBROSE–AUGUSTERFER CORPORA-
TION, Third-Party Defendant,

Francis C. O'Neill, Appellant.

No. 17325.

United States Court of Appeals
Third Circuit.

Argued Jan. 7, 1969.

Decided May 12, 1969.

Leonard Levin, Levin, Levin & Levin, Philadelphia, Pa., for appellant.

J. F. Bishop, Appellate Section, Civil Div., Dept. of Justice, Washington, D. C. (Edwin L. Weisl, Jr., Asst. Atty. Gen., Drew J. T. O'Keefe, U. S. Atty., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before BIGGS, FORMAN and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

Francis C. O'Neill, a pipe fitter, was seriously injured while working at the United States Post Office Building at 30th and Market Streets, Philadelphia. He was employed by Ambrose-Augusterfer Corporation, an air conditioning subcontractor of Wark & Co., which was one of the prime contractors in the renovation of the building. He received workmen's compensation benefits from his employer's insurance carrier, Aetna Casualty Company.

O'Neill, joined by Aetna, brought the present action under the Federal Tort Claims Act [1] against the United States, charging that its negligence caused the

1. 28 U.S.C. § 1346(b).

accident. The United States denied negligence on its part, alleged that O'Neill was contributorily negligent and filed a third party complaint against his employer, Ambrose-Augusterfer Corporation, alleging that it was negligent and therefore liable to the United States either by way of contribution or indemnity.

The District Judge sitting without a jury, as required by 28 U.S.C. § 2402, made findings of fact and conclusions of law to the effect that under Pennsylvania law, which governs this case,[2] there was no negligence on the part of the United States, that plaintiff (O'Neill) was guilty of contributory negligence and his employer, Ambrose-Augusterfer, was negligent. Judgment accordingly was entered in favor of the United States on the plaintiffs' claim; and since the United States was absolved of responsibility, judgment was entered in favor of the third party defendant despite the finding of its negligence. In an addendum the District Judge made supplemental findings assessing plaintiff's damages at $98,345.17, to be effective in the event it should be held on appeal that plaintiff is entitled to recover damages from the United States. 276 F.Supp. 724 (E.D. Pa.1967).

On this appeal plaintiff carries the heavy burden of demonstrating that the District Judge's findings of fact that the United States was not negligent and that plaintiff was contributorily negligent are "clearly erroneous" under Federal Rule of Civil Procedure 52(a). If either of the two foundations for the judgment stands, the appeal must fail, for in Pennsylvania contributory negligence, no matter how slight, is a complete bar to recovery.[3] Consideration of these questions necessarily leads us to the factual circumstances disclosed by the record.

## I.

### THE FACTS

On September 28, 1962, O'Neill was directed by his foreman, Tobin, to drill a hole through the third floor of the Post Office Building, so that water pipes required for the new air conditioning equipment could be run to the second floor. The floor was made of concrete covered with wood. The hole was located alongside the wall of the building. On the other side of the hole, about 18 inches away from the wall and parallel to it, was a conveyor. To reach the hole O'Neill had to step over the conveyor, which was 18 inches high.

The conveyor, used for sorting mail, consisted essentially of metal rollers which were rotated by friction with a moving rubber belt on which they rested. In most sections of the conveyor the rollers could easily be lifted by hand from the belt on which they rested by the force of gravity. They could be moved vertically but not horizontally because they fitted into slots in the side of the conveyor. In some sections of the conveyor, however, where switching equipment was necessary in order to route mail onto connecting lines, the rollers were restrained from any vertical movement. These rollers were fastened in the slots and could not readily be lifted by hand from the belt. The difference in the fitting of the two types of rollers in the slots was not readily apparent to ordinary observation.

At the time of the accident O'Neill had removed the wood flooring and had drilled about halfway through the concrete floor with an electric drill when it struck something and "kicked". He was thrown off balance and as he extended his left hand to seek support it was caught between the roller and the belt of the conveyor. Unfortunately, the roller which pinned his hand was vertically restrained

2. 28 U.S.C. § 1346(b); see, e. g., Small v. United States, 333 F.2d 702, 704 (3 Cir. 1964).

3. Bohner v. Eastern Express, Inc., 405 Pa. 463, 175 A.2d 864 (1961); Crane v. Neal, 389 Pa. 329, 132 A.2d 675 (1957); Bream v. Berger, 388 Pa. 433, 130 A.2d 708 (1957).

to accommodate switching equipment. Because the roller would not lift easily it took some time to release his hand and he suffered serious, permanent injury.

## II.

### Liability of the United States

The District Judge concluded that the United States was not negligent because (1) there was no latent danger in the conveyor belt requiring a warning to plaintiff, and (2) neither plaintiff nor his employer made any adequate request that the belt be shut down while he was drilling the hole, although such a request would have been honored if it had been made.

■ (1) The District Judge's finding that neither O'Neill nor his employer requested any responsible post office official to shut down the conveyor belt while O'Neill was drilling the hole is amply supported by the evidence and therefore may not be disturbed.

O'Neill testified only that he asked his foreman, Tobin, to have the conveyor shut down. Tobin testified that he looked for the postal foreman on the third floor to ask for a temporary shutdown, but failed to find him and made the request to a postal clerk who happened to be standing nearby. This testimony fails to establish that a request was made to a responsible post office official. Moreover, even this inadequate account was impeached by Tobin's pretrial statement in which he had failed to mention a request for a temporary shutdown.

Obviously the conveyor system was expected to remain in operation, since the Post Office was in active use during the renovation work. Indeed, the Government's contract with Wark, the prime contractor, which was referred to in Wark's subcontract to Ambrose-Augusterfer, provided that during the work no Post Office functions would be interrupted and no Post Office equipment was to be shut down. The evidence makes it clear, however, that each of the various prime contractors had a liaison employee to handle these problems and that in practice temporary shutdowns of post office equipment were secured by requests to the designated post office official. Tobin testified that he himself had frequently sought and secured such shutdowns.

In these circumstances the District Judge was justified in concluding that the United States was not obliged to shut down the conveyor system, because there was no specific request made to a responsible post office official.

■ (2) O'Neill contends that the difference in safety between the fixed and the easily removable rollers, which was not readily apparent, constituted a latent danger which required notice to anyone working nearby.

The District Judge's findings, which in effect held that this difference in the two types of rollers did not render the conveyor inherently dangerous because of a latent condition, are not clearly erroneous. It is at least arguable that one who observed the conveyor system and did not distinguish any difference in the two types of rollers could reasonably conclude that all were dangerous and would be harmful to anyone who caught his hand in them. Indeed, O'Neill's testimony that he wanted the conveyor shut down when he began to drill lends support to the conclusion that its danger was obvious to him. The danger in the conveyor system therefore was not a trap which created a duty on the owner to give warning of its existence.[4]

The theory is now urged on us that the United States was negligent in failing to provide a guard or shield which would have prevented O'Neill's hand from being caught in the conveyor. The District Judge did not consider this theory of liability, apparently because it was not pressed in this form at the trial.

4. E. g., Mathis v. Lukens Steel Co., 415 Pa. 262, 203 A.2d 482 (1964); Stimmel v. Kerr, 394 Pa. 609, 148 A.2d 232 (1959).

The record shows that plaintiff's pretrial memorandum specifies as a ground of liability the failure of the United States to guard the machinery properly and that at the end of the trial plaintiff requested a finding of fact that the conveyor system was "inherently dangerous in that no protection was provided to prevent persons from coming in contact with" the moving belt and the rollers.

Aside from what was inherent in the description of the accident and in the photographs of the conveyor, the only evidence on the subject was the testimony of plaintiffs' expert, Miller, an engineering specialist in "static transportation". Miller suggested that a temporary shield of plywood or cardboard might have protected O'Neill while he was at work, but he qualified this statement by observing that since such a shield might have restricted O'Neill's freedom of movement, it might have created a danger greater than that it was meant to eliminate.

In urging this ground of liability, O'Neill refers for the first time to a Pennsylvania safety statute and the decisions which have imposed civil liability for its violation. The present statute is the Act of May 18, 1937, P.L. 654, § 2, as amended, 43 Purdon's Pa.Stat.Annot. § 25–2, which provides:

"(b) All belts, pulleys, gears, chains, sprockets, shafting, and other mechanical power transmission apparatus, stationary engines, electrical equipment, and apparatus shall be properly guarded to protect workers from injury.

"(c) All cranes, hoists, steam or electric shovels, plant railroads, and other apparatus or devices used for moving, lifting, lowering, and transporting materials shall be designated, constructed, equipped, and operated as to eliminate dangerous conditions."

The purpose of such a statute is to provide for the safety of employees and its requirement for guarding machinery with which they may reasonably be expected to come into contact establishes the standard of care which rests on the owner.[5] The Pennsylvania decisions based on the Act and its predecessor Factory Act of May 2, 1905, P.L. 352, since repealed, clearly establish the rule that one who violates the statutory standards is liable in damages for consequent injury, creating in effect a principle of negligence per se in the event of a violation.[6]

More than a half a century ago we described the Act of 1905 as an "humane and danger-eliminating statute", which was not to be "grudgingly" construed in view of its purpose to secure the proper guarding of machinery of every description so as to "prevent preventable harm." American Ice Co. v. Porreca, 213 F. 185–189 (3 Cir. 1914). We applied the Act of 1936 in Wiseman v. United States, 327 F.2d 701 (3 Cir. 1964).

Appellate courts ordinarily will not consider issues which are raised for the first time on appeal.[7] The rule, however, is not inflexible and in exceptional cases will yield to our power under 28 U.S.C. § 2106 to dispose of cases

5. Restatement of Torts 2d, §§ 286, 288b.

6. Price v. New Castle Refractories Co., 332 Pa. 507, 510–511, 3 A.2d 418, 420–421 (1949); Fritz v. Elk Tanning Co., 258 Pa. 180, 101 A. 958 (1917); Gross v. Eagle Wheel Manufacturing Company, 252 Pa. 361, 363–364, 97 A. 457 (1916); Kelliher v. Brown & Company, 242 Pa. 499, 89 A. 589 (1914); Booth v. Stokes, 241 Pa. 349, 351–352, 88 A. 490 (1913); Lanahan v. Arasapha Mfg. Co., 240 Pa. 292, 295–296, 87 A. 286 (1913); Cramer v. Aluminum Co., 239 Pa. 120, 126, 86 A. 654 (1913); Izzo v. Finn, 238 Pa. 602, 86 A. 486 (1913); McCoy v. Wolf Company, 235 Pa. 571, 84 A. 581 (1913); Fegley v. Lycoming Rubber Company, 231 Pa. 446, 80 A. 870 (1911); Valjago v. Carnegie Steel Company, 226 Pa. 514, 75 A. 728 (1910); Jones v. American Carmel Company, 225 Pa. 644, 74 A. 613 (1909).

7. E. g., Sachanko v. Gill, 388 F.2d 859 (3 Cir. 1968); Tromza v. Tecumseh Products Company, 378 F.2d 601, 604 (3 Cir. 1967); Mirkowicz v. Reading Co., 84 F.2d 537 (3 Cir. 1936).

before us in such manner "as may be just under the circumstances." In Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941), the Supreme Court said:

> "Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice." [8]

■■ The present case falls within the exceptional class. The safety statute is an expression of Pennsylvania's rule of social policy. There is no doubt that the conveyor was utterly without any guard or shield, and that plaintiff was seriously and permanently injured. This is a case, therefore, in which the interest of an injured workman and the policy of the State are involved. While the issue of negligence per se was not referred to by plaintiff in the District Court, reference was made to the failure to guard or shield the conveyor. Although it is also the rule that Federal courts ordinarily will take judicial notice of State statutes,[9] it is incumbent on a party who seeks the benefit of a State statute to draw it to the attention of the trial court.[10] Moreover, in its brief before us the Government made no mention of this ground of liability or of any claim of prejudice from its presentation on appeal.

In these circumstances the parties are entitled to obtain the judgment of the trial court on this ground of liability. We shall therefore refrain from expressing any opinion on it before its initial decision by the District Judge after taking evidence and hearing argument on it.

This view of the problem of liability brings us to the District Judge's conclusion that O'Neill was contributorily negligent. For if this finding is sustained, the alleged negligence of the United States loses its significance.

### III.

#### CONTRIBUTORY NEGLIGENCE

■ Contributory negligence of a plaintiff, like the negligence of a defendant, is the lack of "due care under the circumstances." [11] The circumstances by which O'Neill's conduct must be judged are not those which are objectively established by investigation after the accident. His conduct must rather be measured subjectively, by what he reasonably understood to be the circumstances which surrounded him at the time.[12] Included in these circumstances are his experience as a workman and the nature of the task he was required to perform.

O'Neill was experienced in the use of an electric drill. He knew that in drilling through a concrete floor he was likely to encounter metal reinforcements which might cause the drill to "kick". It was his duty, however, to go forward with the drilling of the hole. For metal reinforcements in the concrete were not barriers to the performance of his work; they were merely conditions to be over-

---

8. The case was decided under 26 U.S.C. § 1141(c) (1) (Supp.1939), providing that Circuit Courts of Appeals shall have power to affirm, modify or reverse decisions of the Board of Tax Appeals, "as justice may require."

9. Lumbermen's Mutual Casualty Co. v. Norris Grain Co., 343 F.2d 670, 685 (8 Cir. 1965) ; Straub v. Jaeger, 9 F.R.D. 672 (E.D.Pa.1950) ; Compare Klott v. Chapman, 191 F.Supp. 484, 485 (N.D.Ind. 1961).

10. Prudential Insurance Company v. Carlson, 126 F.2d 607, 611–612 (10 Cir. 1942).

11. Powell v. T. Bruce Campbell Construction Company, 412 Pa. 456, 459, 194 A.2d 883, 884 (1963).

12. See Wilson v. American Chain and Cable Company, 364 F.2d 558, 562–563 (3 Cir. 1966), where we discussed the importance of the subjective element in determining contributory negligence under Pennsylvania law.

come. An encounter with metal reinforcement was bound to be unexpected, for while its presence was likely, it was impossible to know at what moment it would be met. The operator was required to exercise his skill and judgment in making an instantaneous decision whether to diminish the pressure he was exerting on the drill to prevent a "kick". In these circumstances to hold that O'Neill was not using his drill in a safe manner or that he did not take adequate protection and safeguards to meet the contingency of encountering the obstruction which could cause the drill to "kick" would be to apply against him the doctrine discredited in innumerable Pennsylvania cases that negligence may be found from the mere happening of an accident.[13] Moreover there is evidence that before he drilled this hole, O'Neill had already drilled a test hole completely through the concrete floor without encountering any metal. He had then begun to drill the present hole which he intended to enlarge by joining it with the test hole. If the drill encountered metal reinforcements as he was forcing it through the concrete, it would be necessary for the experienced operator to alter, as his experience indicated was appropriate, the pressure he was exerting. The mere fact that the drill may have encountered the metal and that it "kicked" is not proof of the operator's negligence.

Moreover, although there is contradictory evidence, O'Neill testified that Tobin had shown him that there was no danger from the conveyor beside which he was working because the rollers could easily be removed. O'Neill was crouching in a confined space of approximately 18 inches, leaning against an electric drill which might encounter the resistance of metal reinforcements. The extent to which he decreased the pressure as he encountered the metal reinforcements and ran the risk of a "kick" might well have been affected by what he believed was the danger to which he would be exposed by a loss of balance. Far from considering the conveyor a danger, he might well have thought of it as a support in the event of a "kick", something which would have supported him rather than aggravated his loss of balance. In determining O'Neill's subjective view of the circumstances in which he was working it is crucial to know whether he realized that the conveyor was a danger or a possible support. The Pennsylvania courts have frequently pointed out that in determining whether a plaintiff is guilty of contributory negligence his awareness of the danger to which he was exposed is important.[14]

The District Judge's conclusion that O'Neill was contributorily negligent was based upon three findings of fact which are in the form of ultimate findings, conclusory in nature: (1) at the time of the accident O'Neill was not using his drill "in a safe manner", (2) he had every reason to believe that he might meet an obstruction which would cause the drill to "kick" and throw him off balance, (3) he did not "take adequate protection and safeguards" to meet this contingency.[15]

13. See e. g., Hardy v. Clover Leaf Mills, 426 Pa. 206, 209, 232 A.2d 755, 757 (1967); Flagiello v. Crilly, 409 Pa. 389, 390, 187 A.2d 289, 290 (1963); Lescznski v. Pittsburgh Railways Co., 409 Pa. 102, 105, 185 A.2d 538, 539 (1962).

14. See, e. g., Miller v. Borough of Dunbar, 403 Pa. 545, 546, 170 A.2d 593, 594 (1961); Thompson v. Goldman, 382 Pa. 277, 280–281, 114 A.2d 160, 165 (1955).

15. These three findings of fact are as follows:
"13. * * * (P)laintiff was an experienced steamfitter and at the time of the accident was not using his drill or hammer in a safe manner."
"14. Plaintiff had every reason to believe that the concrete floor he was drilling through was reinforced at the depth at which it was in this case and that drilling through the concrete floor he might meet anticipated obstruction which could cause the hammer to 'kick' and throw him off balance.
"15. Plaintiff did not take adequate protection and safeguards to meet the above contingency."

It is impossible to say, for no opinion accompanied the findings of fact and conclusions of law, why O'Neill was not using the drill in a safe manner, or what he failed to do or should have done to take "adequate protection and safeguards" to meet any obstruction which he would encounter as he forced the drill through the concrete floor.

■ Rule 52(a) requires that the trial court "shall find the facts specially and state separately its conclusions of law thereon." This requirement is not met by the statement of the ultimate fact without the subordinate factual foundations for it which also must be the subject of specific findings. This is especially true in cases like this, involving the application of factual findings to the ultimate judgment whether conduct reached the level of due care. Whether in the circumstances of a particular case one failed to exercise due care or to take adequate protection or safeguards, or performed his work in a safe manner, is an ultimate determination which necessarily is premised on subordinate findings. These findings may not be left unarticulated. If they actually were reached in the process of arriving at the ultimate factual conclusion, they must be stated. If they did not enter into the process by which the ultimate factual finding was made, then it was without any supporting foundation. In either case, therefore, it is necessary that the trial court specify these subordinate facts upon which the ultimate factual conclusion must rest.

■ Here the burden of proving that O'Neill was contributorily negligent rested, under Pennsylvania law, on the defendant.[16] We cannot say what evidence the District Judge accepted as credible or what he rejected. In any event, it is not our function, on review, to erect for the first time, out of the evidence such subordinate factual findings as might support the ultimate findings which the District Judge made. We are, therefore, without a basis for review of the District Judge's finding that O'Neill was contributorily negligent.

Accordingly, the judgment will be vacated and on remand the District Court will make adequate, specific findings under Rule 52(a) relating to the defense that O'Neill was contributorily negligent.

IV.

### The Remand

On remand the District Court shall consider and make appropriate findings on the plaintiff's claim of liability against the United States because of failure to comply with the safety requirements of the Act of May 18, 1937, and the defendant's claim of O'Neill's contributory negligence. For this purpose it shall afford the parties an opportunity to present additional evidence.

In entering judgment in favor of the defendant the District Judge by an addendum assessed the plaintiffs' damages in the amount of $98,345.17. Plaintiffs urge that in the event of a remand this finding of the amount of damages should not be re-examined. The assessment of damages was made by the District Judge subsequent to his decision that there was no liability on the part of the defendant. The determination of damages therefore bore the characteristic of an advisory opinion which we disapproved in Romer v. Baldwin, 317 F.2d 919, 922–923 (3 Cir. 1963); cf. Hutton v. Fisher, 359 F.2d 913 (3 Cir. 1966), for it was purely academic when it was made and did not pass through the refining pressure of reality. We believe the interests of justice will be better served by directing the District Judge to afford the parties an opportunity to present additional evidence on damages and to make a new finding on damages in the event the United States is held liable.

The judgment of the District Court therefore will be vacated and the cause remanded for further proceedings in accordance with this opinion.

16. Heffernan v. Rosser, 419 Pa. 550, 555, 215 A.2d 655, 657 (1966); Whitley v. Philadelphia Transportation Co., 211 Pa. Super. 288, 294, 234 A.2d 922, 925 (1967).