## HAZELTINE CORPORATION v. GENERAL MOTORS CORPORATION.

### No. 7798.

Circuit Court of Appeals, Third Circuit.

Argued March 4, 1942.

Reargued May 4, 1942.

Decided Oct. 19, 1942.

Henry T. Kilburn, of New York City (Laurence B. Dodds, of New York City, and E. Ennalls Berl, of Wilmington, Del., on the brief), for appellant.

C. Blake Townsend and Drury W. Cooper, both of New York City, for appellee.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a judgment entered for the defendant in a suit for patent infringement. The subject matter is Trube Patent No. 2,111,483. Trube was plaintiff's assignor. The claims in suit are numbers 28 to 33, inclusive, and 35 to 38, inclusive, plaintiff having consented to dismissal as to other claims. The patent application was filed July 2, 1926; the patent issued March 15, 1938. This action was begun April 19, 1938 and final judgment entered June 13, 1941.

The alleged invention involves a means for improving reception in a radio receiving set. Both sides have supplied us with general propositions, admonitory in nature, designed, no doubt, to set a point of view. The plaintiff wants us to consider Trube's claimed invention as of the time it was made and in the light of historical facts surrounding it. This is sound enough. We are also invited to bear in mind certain other propositions which are likewise true; such as that the apparent simplicity of a new device often leads an inexperienced person to think it would have occurred to anyone familiar with the subject;[1] that it is the common history of important inventions, that their simplicity seems to the

---

[1] Potts v. Creager, 1895, 155 U.S. 597, 608, 15 S.Ct. 194, 39 L.Ed. 275.

ordinary observer to preclude the possibility of inventive faculty;[2] that knowledge after the event is always easy.[3] The defendant, in turn, gives us judicial authority that at least from 1925 onward, the radio art is a developed one and the standard of inventive art is necessarily higher than it was in the earlier history thereof[4] and that absence of invention may be shown by simultaneous solution by half a dozen mechanical improvers, making alleged invention but natural advance.[5] Neither side challenges the other's generalities in vacuo; neither would agree that the other's applied to this litigation. The Court has endeavored, as best it could, to bear them all in mind.

Turning, then, to the case at bar, we refrain from a recitation of the development of radio broadcasting and reception, and state no more of the background than is necessary to present the immediate problem.[6] The patent in suit is aimed at solving a difficulty present in tuned radio-frequency receivers at the time application was made therefor. The difficulty was that the amplification varied with the frequency to which the receiver was tuned, increasing with increasing frequencies. Although it was possible to adjust a receiver so that a suitable amplification could be obtained at the top end of the broadcast range, i. e., 1500 k. c., if the receiver were then tuned to a low frequency station the amplification was so low, that the desired station would be practically inaudible. If on the other hand, the receiver were adjusted so that at the low frequency the desired amplification was attained, at the high frequencies, the amplification was so great that the receiver would become unstable and go into uncontrolled oscillations, manifesting themselves to the listener's ear as squeaking and whistling noises. Trube's patent sought to remedy this situation so that at any frequency the amplification would be uniform.

The solution offered admittedly employed known physical principles of condensers and inductances. These were that the reactances of condensers and inductances to increasing frequencies were opposite in effect, that of a condenser decreasing with increasing frequency, that of an inductance increasing with increasing frequency. Thus if the coupling element[7] were a condenser, the amplification would decrease too rapidly with increasing frequency; if it were an inductance, the amplification would increase too rapidly with increasing frequency. It was claimed and supported by the offered evidence that Trube employed a compound radio frequency coupling consisting of a fixed condenser and a fixed inductance between the circuits of a receiver to transfer the energy received from the antenna through the receiver. The only variable was a condenser which could be tuned to different frequencies. The fixed condenser and inductance were placed in the circuits so as to be in aiding phase, or additive in effect, and the result was that as the variable condenser was tuned to different frequencies the amplification would be substantially uniform. Practically this meant that a radio listener, by turning one dial, would receive the various stations on the broadcast band at about the same amplification. Trube's application stated that a feature of his invention was to prevent the oscillations caused by feedback in the vacuum tubes.[8]

---

[2] Carnegie Steel Company v. Cambria Iron Company, 1902, 185 U.S. 403, 429, 22 S.Ct. 698, 46 L.Ed. 968.

[3] Diamond Rubber Company of New York v. Consolidated Rubber Tire Company, 1911, 220 U.S. 428, 435, 31 S.Ct. 444, 55 L.Ed. 527.

[4] Technidyne Corporation v. McPhilben-Keator, Inc., 2 Cir., 1934, 72 F.2d 242, 243.

[5] 1 Walker on Patents (Deller's Edition, 1937) p. 142, and Supplement.

[6] The plaintiff has, in its brief, helpfully outlined part of the development of the radio art. The treatment has been carefully studied but need not be repeated.

[7] A coupling element is a device used to transfer energy from one circuit to another.

[8] Feedback—at the time of Trube's application, the three element vacuum tube (called "triode") was used for amplification purposes in radio receivers. Its three elements were a filament, grid and plate. One of its disadvantages was that it produced oscillations or whistling noises. This was due to the fact that as the signal voltage, the energy received by the antenna, was transmitted for amplification through the vacuum tube and its circuits, it gave rise to an additional energy impulse which was fed back through the tube and amplified. Each signal impulse gave rise to a feedback impulse so that energy would be transferred back and forth and amplified. The feedback energy had its own frequency, which in combination with the additional frequency present produced the whistling noises or oscillations.

Whether a patent shows invention is a question of fact and the findings of the trier of fact upon this issue are not to be disturbed unless clearly erroneous or not supported by substantial evidence. Keyes v. Grant, 1886, 118 U.S. 25, 6 S.Ct. 974, 30 L.Ed. 54;[9] St. Paul Plow Works v. Starling, 1891, 140 U.S. 184, 196, 197, 11 S.Ct. 803, 35 L.Ed. 404; Thomson Spot Welder Company v. Ford Motor Company, 1924, 265 U.S. 445, 446, 447, 44 S.Ct. 533, 68 L.Ed. 1098; United States v. Esnault-Pelterie, 1936, 299 U.S. 201, 57 S.Ct. 159, 81 L.Ed. 123.[10] The trier of fact in this case was, of course, the trial judge. Under Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the trial judge is to "find the facts specially and state separately [his] conclusions of law thereon * * *." This however he did not do, and his opinion incorporates both facts and conclusions of law without designating either specifically. The failure of the trial judge to comply literally with the provisions of Rule 52(a), although it has been characterized as a "dereliction of duty",[11] is not always a ground for reversal and remand with instructions to make specific findings as required by the Rule. The latter course of action has been adopted where there was an inadequate statement of facts upon vital issues and where such factual issues were not resolved.[12] If,

however, the opinion of the trial judge afforded a "clear understanding of the basis of the decision below" and resolved the major factual disputes, the mere formal requirement of separation of findings of fact and conclusions of law has been held not sufficient to necessitate a reversal.[13] In this case, a reading of the trial judge's opinion reveals a full discussion and treatment of the major factual issues which leaves no doubt as to which facts the court accepted and relied upon in rendering its decision. These we can treat as findings of fact and so do.

The trial court has found that the Trube patent here in litigation was void for want of invention. If that conclusion is supported by the evidence it settles the case and there is no need for further discussion of other points raised by the defendant. Our conclusion is that this finding by the trial judge is clearly supportable in view of the evidence. The best way to set this out, we believe, is to state briefly the various elements claimed in Trube's patent and compare his alleged invention with the contemporaneous knowledge in the radio art out of which it evolved.

The plaintiff sets out Trube's claim 36 as typical of the claims in suit. It describes: "A tunable radio-frequency coupling system comprising a resonant circuit includ-

---

[9] For recent Circuit Court of Appeals' cases on this point see: Etten v. Kauffman, 3 Cir., 1941, 121 F.2d 137, 141, and cf. Radiator Specialty Co. v. Buhot, 3 Cir., 1930, 39 F.2d 373; B. F. Sturtevant Co. v. Massachusetts Hair & Felt Co., 1 Cir., 1941, 122 F.2d 900, certiorari denied 1942, 315 U.S. 823, 62 S.Ct. 917, 86 L.Ed. 1219; Stubnitz-Greene Spring Corporation v. Fort Pitt Bedding Co., 6 Cir., 1940, 110 F.2d 192, 196; Strong-Scott Mfg. Co. v. Weller, 8 Cir., 1940, 112 F.2d 389, 395; Research Products Co., Ltd., v. Tretolite Co., 9 Cir., 1939, 106 F.2d 530, 534.

[10] Cf. Mason v. Graham, 1874, 23 Wall. 261, 90 U.S. 261, 275, 23 L.Ed. 86; Corona Cord Tire Company v. Dovan Chemical Corporation, 1928, 276 U.S. 358, 375, 48 S.Ct. 380, 72 L.Ed. 610. Note that in the latter case and in Thomson Spot Welder Company v. Ford Motor Company, supra, there was a conflict between circuits upon the validity of the same patent. Note, also, that these cases were appeals in equity suits and prior to the present Rules. See 3 Moore's Federal Practice (1938) § 52.01.

[11] 3 Moore's Federal Practice (1938) § 52.02.

[12] Mayo v. Lakeland Highlands Canning Co., 1940, 309 U.S. 310, 60 S.Ct. 517, 84 L.Ed. 774; Perry v. Baumann, 9 Cir., 1941, 122 F.2d 409; Matton Oil Transfer Corp. v. The Dynamic, 2 Cir., 1941, 123 F.2d 999. Cf. Interstate Circuit, Inc., v. United States, 1938, 304 U.S. 55, 58 S.Ct. 768, 82 L.Ed. 1146, and note particularly dissent of Justices Stone and Black at page 58 of 304 U.S., page 770 of 58 S.Ct. The case involved a government anti-trust suit, and as the Court pointed out, the appeal from the district court decision would be sent directly to the Supreme Court.

[13] Goodacre v. Panagopoulos, 1940, 72 App.D.C. 25, 110 F.2d 716; Minnesota Mining & Manufacturing Co. v. Coe, App. D.C.1941, 125 F.2d 198 (patent case). Cf. Knapp v. Imperial Oil & Gas Products Co., 4 Cir., 1942, 130 F.2d 1. See also statement of Mr. Justice Roberts in the Mayo case, supra, at page 316 of 309 U. S., at page 520 of 60 S.Ct., 84 L.Ed. 774, that "there should be *fair* compliance with Rule 52(a) * * *" (italics added).

ing inductive and capacitive elements, only one of said elements being adjustable for tuning said circuit over a wide range of radio frequencies, another circuit to be coupled therewith, fixed reactance coupling means including inductance for providing coupling therebetween which varies with frequency in one sense as said tunable circuit is tuned over said range, and fixed reactance coupling means including capacitance for providing coupling therebetween which varies with frequency in the opposite sense, said coupling means being relatively poled in aiding phase, whereby the coupling variation of one said means at least partially compensates for the coupling variation of the other said means." When one analyzes this claim with the evidence in the case the reason for the conclusion that no invention is found on behalf of the plaintiff's assignor becomes apparent.

(1) Magnetic and inductive elements; individually and in combination. As stated in our recital of the facts and again in the claim, the alleged invention makes use of the principle of combined coupling, that is the use of capacitance and inductance (condensers and transformers) to transfer energy from one circuit to another circuit. This principle is not new. The plaintiff, itself, admits that "both kinds of coupling were known prior to Trube and that the general characteristic of the coupling effect of each with changing frequency was known in theory." And the plaintiff's chief witness, Professor Hazeltine, stated that as early as 1918 he knew that inductive and capacitive coupling could be used together advantageously in a vacuum tube coupling circuit. In evidence, too, was an excerpt from the book of Professor Morecroft, of Columbia University, treated by both sides as a scientist of authority in radio-physics. His book, "Principles of Radio Communication", published in 1921, gives a circuit diagram showing the combined use of capacitive and inductive coupling and the text of Professor Morecroft's book states, as a· fact, that the combination is used in certain radio receivers.[14] The plaintiff's witness, Axel G. Jensen, a former student both at the University of Copenhagen and at Columbia, stated that he was familiar with the behavior of tuned coupled circuits

through instruction at Copenhagen before he came to Columbia and became a student under Professor Morecroft. This evidence is certainly sufficient to show wide theoretical knowledge of both individual coupling elements, (capacitance and inductance) with their characteristic response to varying frequencies, and also the principle of compound coupling. It also shows, though not so definitely, the application of compound coupling in practice, discussed in the next paragraph.

(2) Practical applications of compound coupling. The compensatory action of the combined use of condensers and inductances as couplings at varying frequencies was not only established as a matter of theory, but was employed by various men in the field of electrical communication for specific purposes where that effect was desirable. Thus it was used in Whittle Patent No. 1,625,840 (application filed 1921, issued 1927) to transfer energy uniformly between a telephone cable and an open wire line at varying frequencies. It was likewise used in German Patent No. 365,606 (1922) to obtain uniform amplitude in the oscillations between an oscillation generator and an oscillation amplifier at different frequencies. Again, in an article appearing in The Wireless World and Radio Review,[15] the use of compound coupling in opposing phase, so that the compensatory effect of the two elements would be subtractive in order to blot out radio station signals at frequencies close to the desired one, was described.

In addition to the foregoing, the defendant's expert, Mr. Kelly, also claimed to have found these same principles applied in various other instances in the same field. Among them were stated to be an article by Friis and Jensen;[16] an article by King appearing in the Bell System Technical Journal of 1923[17] and Batsel Patent No. 1,709,651 (application filed 1923, issued 1929). The question of the applicability of these instances was close enough to provoke controversy among the experts for either side at the trial. In view of this conflict of testimony the finding of the trial judge as to their applicability is conclusive.

(3) "In aiding phase." Mention was made above that in the Reeves paper the use

---

[14] pp. 79–84.

[15] Reeves, Some Effects of Capacity on Mutual Induction (June 17, 1922) pp. 346–350.

[16] High Frequency Amplifiers, 3 Bell System Technical Journal (1924) No. 2, pp. 181–195.

[17] Thermonic Vacuum Tubes and Their Applications, V. 2, No. 4, pp. 54–59.

of the two elements in the coupling was made in opposing phase. In the Trube patent in litigation the elements are used "in aiding phase" which means, according to Professor Hazeltine's testimony, that their effect is additive rather than subtractive, and when additive, the effect of the compound coupling is greater than the effect of either element thereof alone. But there is nothing new in arranging the elements of a compound coupling so as to be either in aiding or opposing phase nor in the results obtained therefrom. This is specifically discussed in at least five of defendant's exhibits, all prior in time to the application for the patent in the case at bar. Thus it is found in Morecroft, King, Friis and Jensen article and Patents No. 1,727,010 (1929) and No. 1,859,867 (1932), in Whittle Patent and Reeves' article, all of which have been cited above. This establishes, we think, that the use of compound coupling, in aiding or opposing phase, according to what the user wishes to accomplish, was certainly well known to persons working in the field of electrical communications.

(4) Fixed elements. The plaintiff, following the words of the claim in the patent, claims that the "fixed reactance coupling" part of his description makes its coupling new in the art. The practical effect of this fixed coupling is that the unlearned user of a radio receiver can get reception from the station he desires to receive by turning only one dial which works a variable tuning condenser. He does not have to adjust the coupling condenser which he had to do in Trube's earlier patent[18] where capacitive coupling was used. In other words, he gets the wave length he pleases by turning one dial and the amplification takes care of itself. Our question is not whether this is convenient for the radio user; unquestionably it is. Our problem is rather whether there is in this application anything which takes on the character of invention. In the Whittle patent, previously referred to, there obviously was employed in the compound coupling a fixed condenser. Defendant's witness, Mr. Kelly, testified that he could deduce from a formula appearing in the Friis and Jensen paper that if the capacity coupling were left unchanged or fixed its response would vary with frequency. If this view be taken as established, as it must be in the light of the lower court's finding, it is clear that the principle of fixed coupling was not introduced into the art by Trube or, if that is too strong, its introduction was but the natural advance in the art through the application of an already known principle.

(5) Application of compound coupling to a tuned radio frequency receiver. The plaintiff contends that all that has been shown is not sufficient to deprive Trube's patent of the quality of invention. None of the authorities cited, it says, discuss or apply the principle of compound coupling to tuned radio frequency receivers. The problems they discuss, plaintiff contends, are far afield from that of Trube. It may be that the precise application of principles of electrical communication which Trube made had not been made by anybody else, although there is testimony to the contrary from the defendant's expert. But aside from that, Trube was working in an art in which there had been rapid advance for several years prior to his claimed invention. The principles were known to experts in that field and their applications, including that of combined coupling, had been talked about and applied. This principle of combined coupling, specifically, had been applied to achieve uniform response at varying frequencies in at least two instances. Trube applied the principle to a situation where the general problem to be solved was of the same character, namely: to get uniform amplification at varying frequencies or, more broadly stated, to get more uniform transmission of electrical energy at different frequencies. Thus stated, the problem which confronted Whittle and the German inventor was, broadly speaking, almost the same. Trube's application may well have been useful, but we do not find in his use of the known principles and devices anything which rises to the point of invention. All he did was to apply a known device (combined coupling) to another known device (a tuned radio frequency receiver) to solve a problem which confronted the art generally and a scientific analysis of which, on the basis of generally accepted scientific principles, pointed to the very device chosen for its solution.

Instances from decided cases presenting identical facts are obviously not to be found in patent litigation. But there are numerous situations in which courts confronted with the question whether invention is found by ingenious application of known principles, to a known problem, by the use of devices already known and understood,

---

[18] Patent No. 1,762,431, [1930].

40

to produce a predictable result, have held that invention was not involved. Slayter & Co. v. Stebbins-Anderson Co., Inc., 4 Cir., 1941, 117 F.2d 848; Utah Radio Products Co. v. General Motors Corporation, 2 Cir., 1939, 106 F.2d 5; Kellogg Switchboard & Supply Co. v. Michigan Bell Telephone Co., 6 Cir., 1938, 99 F.2d 203, certiorari denied, 1939, 308 U.S. 582, 60 S.Ct. 104, 84 L.Ed. 487; Perfect Circle Co. v. Hastings Mfg. Co., 6 Cir., 1937, 88 F.2d 813.

The judgment of the District Court is affirmed.

Circuit Court of Appeals, Eighth Circuit.