NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
_____

No. 10-1388
_____


PHARMETHOD, INC.

v.

MICHAEL CASERTA,

Appellant.


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 2:09-cv-05815
District Judge: Judge Curtis Joyner

Argued May 28, 2010

Before: McKEE, RENDELL, and STAPLETON, *Circuit Judges.*

(Opinion filed : June 2, 2010)

Bruce E. Rodger, Esq.
Ronald H. Surkin, Esq. (**Argued**)
Gallagher, Schoenfeld, Surkin, Chupein & DeMis
25 West Second Street
P.O. Box 900
Media, PA 19063-0000

    *Attorneys for Defendant-Appellant*

James P. Golden, Esq. (**Argued**)
Jane C. Silver, Esq.

Hamburg & Golden
1601 Market Street
Suite 3310
Philadelphia, PA 19103-0000

    *Attorneys for Plaintiff-Appellee*

OPINION

McKEE, *Chief Circuit Judge*.

Michael Caserta appeals the district court's order preliminarily enjoining him from competing with his former employer PharMethod, soliciting its customers, disclosing its confidential information, or disparaging it. For the reasons that follow, we will vacate and remand for further proceedings consistent with this opinion.

**I.**

Inasmuch as we write primarily for the parties who are familiar with the factual and procedural history of this case, we need only recite as much of the underlying dispute as is helpful to our discussion.

At the hearing on PharMethod's motion for preliminary injunctive relief, the district court heard testimony and accepted exhibits, but did not make findings. It also heard legal arguments, but did not rule on them. The judge indicated that he was unmoved by Caserta's claim that the restrictive covenant at issue was unenforceable. Instead, the judge focused on the fact that Caserta had knowingly agreed to the covenant, and should therefore be bound by its terms.

Following the hearing, the district court issued a one and one-half page order

2

granting PharMethod's motion for a preliminary injunction.  That order provides as

follows:

> 1.  The Court finds that Michael Caserta violated the restrictive covenant
> contained in the employment agreement entered into by the parties on April
> 25, 2005.
> 2.  The Court finds that injunctive relief is necessary to prevent immediate
> and irreparable harm that cannot be compensated by money damages.
> Greater injury will occur from refusing the injunction than from granting it.
> The injunction will restore the parties to the status quo as it existed
> immediately before Michael Caserta's wrongful conduct.  The wrong is
> actionable and the injunction is reasonably suited to abate the wrong.
> PharMethod's right to relief is clear.
> 3.  No bond is required.
> 4.  Michael Caserta is enjoined from competing with PharMethod, soliciting
> PharMethod's customers, disclosing or using PharMethod's confidential
> business information and trade secrets, disparaging PharMethod, and
> otherwise violating the restrictive covenant for a period of one year from
> the date of August 13, 2009.
> 5.  Michael Caserta must make a full accounting of the full amount that he
> earned while competing with PharMethod Inc., including, but not limited to,
> all earnings from the speaker program conducted on November 18, 2009.

A4-5.  This appeal followed.[1]

## II.

Caserta alleges numerous errors arising from the district court's grant of

preliminary injunctive relief.  We first address Caserta's contention that we must remand

---

[1] The district court had subject matter jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332.  We have appellate jurisdiction over the district court's interlocutory order granting a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1).

We "review an order granting a preliminary injunction for abuse of discretion, the factual findings for clear error, and the determinations of questions of law de novo." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) (internal quotation marks and citation omitted).

because the district court failed to fulfill its obligations under Federal Rule of Civil Procedure 52(a)(2).[2]

Rule 52(a) provides that: "[i]n granting or refusing an interlocutory injunction," the court must "find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court." Fed. R. Civ. P. 52(a)(1) - (2). The rule requires that the district court make these findings and conclusions, *see H. Prang Trucking Co. v. Local Union No. 469*, 613 F.2d 1235, 1238 (3d Cir. 1980), as the findings in part "serve[] as a necessary aid to the appellate courts," *Berguido v. Eastern Air Lines, Inc.*, 369 F.2d 874, 877 (3d Cir. 1966).

However, "[t]he failure of the trial judge to comply *literally* with the provisions of Rule 52(a), although it has been characterized as a 'dereliction of duty,' is not always a ground for reversal and remand with instructions to make specific findings as required by the Rule." *Hazeltine Corp. v. Gen. Motors Corp.*, 131 F.2d 34, 37 (3d Cir. 1942) (emphasis added) (internal citation omitted). As long as the district court's opinion affords a "clear understanding of the basis of the decision . . . and resolve[s] the major

---

[2] PharMethod claims that Caserta waived any violation of Rule 52(a) by not raising it before the district court. However, as we conclude that the district court did not make sufficient findings of fact or conclusions of law to allow us to review the court's preliminary injunction, any waiver is irrelevant. *See Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 537 (3d Cir. 1986) ("While a party may waive the compliance issue, we nonetheless must examine the findings to ascertain if they are adequate to explain sufficiently the basis for the injunction so that we can perform our review function.")

factual disputes, the mere formal requirement of separation of findings of fact and conclusions of law has been held not sufficient to necessitate a reversal." *Id.* (internal quotation marks and citation omitted).

Nonetheless, an appellate court should "'vacate the judgment and remand the case for findings if the trial court has failed to make findings when they are required or if the findings it has made are not sufficient for a clear understanding of the basis of the decision.'" *H. Prang Trucking Co.*, 613 F.2d at 1238 (quoting 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2574 (1971)). Moreover, a district court does not satisfy Rule 52(a) merely "by the statement of the ultimate fact without the subordinate factual foundations for it which also must the subject of specific findings." *O'Neill v. United States*, 411 F.2d 139, 146 (3d Cir. 1969). In *O'Neill*, the district court concluded that the plaintiff was contributorily negligent based on three factual findings:

> (1) at the time of the accident O'Neill was not using his drill in a safe manner, (2) he had every reason to believe that he might meet an obstruction which would cause the drill to kick and throw him off balance, [and] (3) he did not take adequate protection and safeguards to meet this contingency.

*Id.* at 145 (internal quotation marks and citations omitted). We held that these findings of "ultimate facts" were insufficient to permit meaningful review. Accordingly, we vacated the judgment and remanded so that the district court could make "adequate, specific findings under Rule 52(a) relating to the defense that O'Neill was contributorily negligent." *Id.* at 146. We have also vacated and remanded a district court's order for

5

failure to clearly articulate its conclusions of law in accordance with Rule 52(a). *See*

*Prof'l Plan Exam'rs, Inc. v. Lefante*, 750 F.2d 282 (3d Cir. 1984).

When we review the order that was entered here against this standard, it is clear

that the district court failed to set forth sufficient findings of fact or conclusions of law to

explain its decision to grant a preliminary injunction, or to permit us to engage in

meaningful review.

A district court must examine the following four factors when deciding whether to

grant a preliminary injunction:

> (1) whether the movant has shown a reasonable probability of success on
> the merits; (2) whether the movant will be irreparably injured by denial of
> the relief; (3) whether granting preliminary relief will result in even greater
> harm to the nonmoving party; and (4) whether granting the preliminary
> relief will be in the public interest.

*Allegheny Energy, Inc. v. DQE, Inc*., 171 F.3d 153, 158 (3d Cir. 1999) (internal quotation

marks and citation omitted).

In explaining its grant of injunctive relief here, the district court merely stated its

ultimate determinations on the first three factors without explaining how it arrived at

these ultimate determinations.[3]  For instance, the court stated that PharMethod would

---

[3] We also note that the district court improperly addressed the *merits* of PharMethod's claim, A4 ("The Court finds that Michael Caserta violated the restrictive covenant contained in the employment agreement entered into by the parties on April 25, 2005."), rather than the *likelihood of success* on the merits.  *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits.").

suffer irreparable harm if the injunction were not granted, and that the harm from denying the injunction would be greater than the harm from granting it. However, the court did not identify the harm that would result to PharMethod, nor did it explain why that harm was greater than the harm Caserta would face if prohibited from earning an income in his chosen profession.[4]

PharMethod nonetheless argues that the district court satisfied the requirements of Rule 52(a) by including its "essential findings" in its order. It further argues that the court made other findings during the hearing. We are not persuaded. First, Rule 52(a) is not satisfied "by the statement of the ultimate fact without the subordinate factual foundations for it which also must the subject of specific findings." *O'Neill*, 411 F.2d at 146. Moreover, PharMethod's position is not advanced by its claim (both in its brief and again at oral argument) that the district court made additional findings on the record. The record simply does not contain findings that satisfy the requirements of Rule 52(a).

Given the paucity of findings of fact and conclusions of law, there is an insufficient basis for meaningful appellate review. We accordingly must remand so that

---

[4] The restrictive covenant stated that any breach of its terms would result in irreparable harm. PharMethod accordingly argues that Caserta, by signing the covenant, conceded that his actions would be irreparably harmful. It therefore maintains that the district court need not have explained its finding of irreparable harm. PharMethod's argument, however, does not diminish the need for the district court to state these reasons. If the district court based its conclusion on irreparable harm on Caserta's conceding the issue by signing the restrictive covenant, we need to know, so that we can review *de novo* its conclusion that proof of actual irreparable harm is waiveable. If, however, the district court concluded that PharMethod faced irreparable harm because it found that Caserta was poised to steal several of its clients, we need to know, so that we can review that finding for clear error. *See O'Neill*, 411 F.2d at 146.

the district court can fulfill its obligations under Rule 52(a)(2).

**III.**

Inasmuch as remand is required, we think it appropriate to provide some guidance for the district court's inquiry and its resolution of Caserta's arguments that the restrictive covenant is unenforceable.[5]

Caserta first argues that PharMethod cannot enforce the restrictive covenant because PharMethod was not a party to the employment agreement, and Rentacom never assigned its interest in that agreement to PharMethod. In support of this proposition, Caserta relies primarily on *Hess v. Gebhard & Co.*, 808 A.2d 912 (Pa. 2002). In *Hess*, an employee signed a non-competition agreement with his employer. Later, another corporation purchased the entirety of that employer's assets, including the non-competition agreement. The Pennsylvania Supreme Court refused to let the successor corporation enforce the restrictive covenant against Hess, as Hess had not consented to the assignment. *Id.* at 921-23.

Caserta also argues that *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010), supports his position. There, we distinguished *Hess* because Zambelli's corporate restructuring was a stock sale rather than an asset purchase, and following a stock sale, a corporation's identity remains unaltered. Accordingly, we held that assignment was unnecessary and that the corporation, notwithstanding its altered

---

[5] It is uncontested that Pennsylvania law applies to the employment agreement at issue here.

8

ownership, continued to have the right to enforce the covenant. 592 F.3d at 423. Caserta argues that *Zambelli*, like *Hess*, stands for the proposition that corporate identity matters when enforcing a restrictive covenant, and that absent an assignment, only an entity that is legally the same as the contracting entity can enforce a non-competition agreement.

Caserta entered into the agreement with one corporation, Rentacom "presumably because Caserta's contract was with 'Dyventive,' a fictitious name owned by Rentacom". He later became an employee of PharMethod, an entity that despite having similar ownership as Rentacom, appears to be a separate and unrelated corporation. Caserta did not sign a non-competition agreement with PharMethod, and despite the assignability provision in the agreement with Rentacom, there was no evidence offered to show that Rentacom ever actually assigned its interest in that agreement to PharMethod. Accordingly, insofar as it is a separate legal entity from Rentacom, PharMethod may have absolutely no legal right to enforce the covenant.[6] On remand, the district court must make findings of fact and conclusions of law about the relationship between PharMethod and Rentacom d/b/a Dyventive, and determine if PharMethod is entitled to enforce this agreement at all.

---

[6] In *Hess*, the court indicated that its primary reason for not making a default rule of assignability for non-competition agreements was that they are "personal." Thus, "[t]he fact that an individual may have confidence in the character and personality of one employer does not mean that the employee would be willing to suffer a restraint on his employment for the benefit of a stranger to the original undertaking." 808 A.2d at 922. To the extent that the record shows that Caserta's personal relationship with Rentacom was sufficiently similar to its personal relationship with PharMethod, the facts of this case may be distinguishable from *Hess*. This too the district court must resolve on remand.

Assuming, *arguendo*, that PharMethod can enforce a restrictive covenant in an agreement between Caserta and Rentacom, Caserta next argues that the resulting restrictions are unreasonable and therefore unenforceable absent modification by the court.

In Pennsylvania, post-employment restrictive covenants are enforceable if: (1) they are incident to an employment relationship between the parties; (2) the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and (3) the restrictions imposed are reasonably limited in duration and geographic extent. *See Sidco Paper Co. v. Aaron*, 351 A.2d 250, 252 (Pa. 1976).

However, even though restrictive covenants satisfying these concerns can be enforceable, they are nonetheless "not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living." *Hess*, 808 A.2d at 917. Moreover, they are closely scrutinized because Pennsylvania courts recognize "the inherently unequal bargaining positions" of employer and employee, *Reading Aviation Serv., Inc. v. Bertolet*, 311 A.2d 628, 630 (Pa. 1973), and the significant hardship that can result when an employee is bound by such an agreement, *see Morgan's Home Equip. Corp. v. Martucci*, 136 A.2d 838, 846 (Pa. 1957). A court must therefore make an in-depth inquiry before entering a preliminary injunction that may have an impact on a person's livelihood. The court must "balance[] the employer's protectible business interests against the interest of the employee in earning a living in his or her

10

chosen profession, trade or occupation, and then balance[] the result against the interest of the public." *Hess*, 808 A.2d at 920.

A restrictive covenant is reasonably necessary for the protection of the employer when it is narrowly tailored to protect an employer's *legitimate* interests. Interests that a covenant may legitimately protect include trade secrets, confidential information, good will, and unique or extraordinary skills. *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007). Eliminating competition or gaining an economic advantage, however, are not legitimate business interests. *Hess*, 808 A.2d at 920-21. Courts similarly scrutinize geographical restrictions in non-competition agreements with care. Courts uphold agreements lacking geographic limits, or with very broad geographic limits, only where the employee's duties and customers were equally broad. *Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469, 476 (E.D. Pa. 2007).

When a covenant imposes restrictions broader than necessary to protect the employer, a court of equity may "blue pencil" the agreement by granting enforcement that is limited to those portions of the restrictions which are reasonably necessary for the protection of the employer. *Sidco Paper Co.*, 351 A.2d at 254. However, gratuitous over-breadth militates against any enforcement whatsoever. Such over-breadth suggests "an intent to oppress the employee and/or to foster a monopoly, either of which is an illegitimate purpose." *Id.* at 257. Accordingly, "[a]n employer who extracts a covenant in furtherance of such a purpose comes to the court of equity with unclean hands and is,

11

therefore, not entitled to equitable enforcement of the covenant." *Id.*

Here, we do not know if the court assessed whether the covenant's restrictions were necessary to PharMethod's legitimate business interests, or if it assessed how those interests compared to Caserta's interests and the interests of the public. The transcript from the preliminary injunction hearing, however, suggests that it did not. Rather, the transcript indicates that the court disregarded everything but the contractual language.[7] The judge focused on the fact that Caserta knowingly agreed to the covenant, and accordingly seemed to conclude that it was improper for Caserta to now object to its terms. However, as we have explained, this is contrary to Pennsylvania law. The enforcement of these covenants is not based on a detached deference to contractual language; it involves an active and engaged inquiry aimed at ensuring that the end result is fair to both parties.

The order that we now vacate enjoined Caserta from, *inter alia*, "competing with PharMethod." A5. On remand, the court must assess whether such a broad and unqualified restriction is necessary to protect PharMethod's legitimate interests. PharMethod is legitimately concerned about its confidential client and pricing information. Like the employee in *Insulation Corp. of Am. v. Brobston*, 667 A.2d 729

---

[7] The court also appears to have ignored (or least minimized) many problems with the actual language of the agreement. Caserta points out numerous drafting errors in the non-competition clause. For instance, the anti-solicitation sub-clause forbids him from soliciting "Companies." However, the word "Company" is defined in the agreement to mean Dyventive, and "Companies" is not defined at all, though in other places, it is clearly used to refer to Dyventive.

12

(Pa. Super. Ct. 1995), however, Caserta is bound by a non-disclosure agreement. It is certainly possible that PharMethod's legitimate concerns could be addressed merely by enforcing that agreement alone. PharMethod is also legitimately concerned about the customer good will that Caserta generated during his employment on behalf of PharMethod. That concern, however, might be addressed by an appropriately tailored injunction prohibiting Caserta from soliciting PharMethod clients. *See Morgan's Home Equip. Corp.*, 136 A.2d at 846-47.

The district court must also address on remand Caserta's argument that enforcement of the restrictive covenant here is inappropriate because he was terminated by PharMethod, as some Pennsylvania courts have shown a reluctance to enforce restrictive covenants against an employee who leaves employment involuntarily. *See Brobston*, 667 A.2d at 735. If the district court predicts that *Brobston* would be endorsed by the Supreme Court of Pennsylvania, it should give due consideration to whether Caserta's discharge should play a role in its balancing of the equities in this case.[8]

Similarly, it should consider whether PharMethod's breach in terminating

---

[8] In *Brobston*, the court explained that once the employer has terminated an employee, the employer's "need to protect itself from the former employee is diminished by the fact that the employee's worth to the corporation is presumably insignificant. Under such circumstances, [the court] conclude[d] that it is unreasonable as a matter of law to permit the employer to retain unfettered control over that which it has effectively discarded as worthless to its legitimate business interests." 667 A.2d at 735. Although we do not suggest that Kovalcik thought that Caserta was "worthless," Kovalcik clearly thought that PharMethod would be better off without him than with him. Yet, the district court did not explain how, if at all, the fact that PharMethod so readily rejected Caserta's talents weighed in its equitable balancing of interests when deciding to enforce this agreement not to compete.

Caserta's employment without the two weeks' notice required by the contract relieves Caserta of his obligation. *See Carlson v. Arnot-Ogden Mem. Hosp.*, 918 F.2d 411, 414 (3d Cir. 1990); *Ritz v. Music, Inc.*, 150 A.2d 160, 162 (Pa. Super. Ct. 1959).

**IV.**

Caserta finally argues that the district court erred by issuing a preliminary injunction without requiring PharMethod to post a bond in accordance with Federal Rule of Civil Procedure 65(c). Rule 65(c) provides that: "[t]he court may issue a preliminary injunction or a temporary restraining order *only if the movant gives security* in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added).

If, after conducting the analysis described above, the district court decides to again issue a preliminary injunction, the district court must consider the mandate of Rule 65(c). *See Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 210 (3d Cir. 1990) ("On its face, [Rule 65(c)] admits no exceptions. . . . [T]here are important policies undergirding a strict application of the bond requirement in most injunction granting contexts. . . . Given the text and policies of rule 65(c), this court has interpreted the bond requirement very strictly.") (internal quotation marks and citations omitted).

We realize that we did not require that a bond be posted in *Temple University v. White*, 941 F.2d 201 (3d Cir. 1991). However, that case had broad implications for the general welfare that are nowhere to be found here. Furthermore, we have made clear that

14

the *Temple University* exception is quite narrow, and must be supported by specific findings:

> We have never excused a District Court from requiring a bond where an injunction prevents commercial, money-making activities. Rather, we have recognized exceptions in other contexts only where the balance of [the] equities weighs overwhelmingly in favor of the party seeking the injunction and when the District Court make[s] specific findings. . . . We therefore hold that a district court lacks discretion under Rule 65(c) to waive a bond requirement except in the exceptionally narrow circumstance where the nature of the action necessarily precludes any monetary harm to the defendant . . . .

*Zambelli*, 592 F.3d at 426 (internal quotation marks and citations omitted).

We recognize, as PharMethod reminds us, that the restrictive covenant at issue here states that Caserta "agrees that temporary and permanent injunctive relief would be appropriate remedies . . . without bond or security." A27. However, that purported agreement is in tension with the requirements of Rule 65(c). The district court must address and resolve this tension if it refuses to require a bond on this basis.

## V.

For all the reasons set forth above, the order of the district court granting PharMethod's motion for a preliminary injunction will be vacated, and this matter will be remanded for further proceedings consistent with this opinion.

15